**Kay PARRA, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, California Casualty Indemnity Exchange, J.C. Penney Life Insurance, American National Life Insurance Co., California State Automobile Association, Union Labor Life Insurance Co., Juan Garcia, and Does 1–20, Defendants.**

No. C 01–4008 MJJ.

United States District Court,
N.D. California.

Feb. 27, 2003.

As Amended May 8, 2003.

---

James H. Fleming, Robert D. Phillips, Jr., Eugenia S. Chern of Fleming & Phillips LLP, Walnut Creek, CA, Carolyn A. Knox of Seyfarth Shaw, Carrie L. Daughters, Peter E. Romo, Jr., Seyfarth Shaw, San Francisco, CA, James R. Kauffman, Law Office of Edward E. Rockman, San Mateo, CA, for Defendants.

## ORDER GRANTING DEFENDANTS MOTIONS FOR SUMMARY JUDGMENT; ORDER TO SHOW CAUSE

JENKINS, District Judge.

### INTRODUCTION

Before the Court are defendant Life Insurance Co. of North America's Motion For Summary Judgment, defendant J.C. Penney Life Insurance Co.'s Motion For Summary Judgment, defendant Union Labor Life Insurance Co.'s Motion For Summary Judgment, and plaintiff Kay Parra's Cross Motion For Summary Judgment. All of these motions are based on the same set of facts and concern defendants' denial of accidental death benefits to plaintiff as a result of her husband's death. Plaintiff maintains that a traffic accident triggered her husband's death, while defendants maintain that his death was caused by the host of serious physical ailments he was suffering at the time, and that the policies under which plaintiff is seeking benefits have exclusions for death resulting from sickness or disease. Because plaintiff has presented no competent evidence to support her contention that the accident precipitated her husband's demise, the motions for summary judgment brought by the various defendants are GRANTED, and plaintiff's motion for summary judgment is DENIED.

### FACTUAL BACKGROUND[1]

#### 1) The Death Of Henry Parra

Kay Parra, Livermore, CA, Pro se.

---

1. The following general recitation of facts has been culled from all motions currently before

On September 29, 2000, at around 4:00 a.m., Henry Parra died in his wife's arms at their family home. At the time of his death, Mr. Parra was suffering a number of serious ailments, including end-stage cirrhosis of the liver, advanced diabetes, advanced coronary artery disease, hypertension, and Hepatitis B. In addition, Mr. Parra had also been treated for prostate cancer, a stroke, and had undergone numerous surgeries, including open-heart surgery, operations to install and/or repair shunts in his liver, and urologic and abdominal surgery. Despite these complications, Mr. Parra appeared to be doing well in August and September of 2000, traveling with his family and even conducting a family Bar–B–Que on September 24, 2000.

On September 25, 2000, however, Mr. Parra was driving to Oakland when he was involved in a traffic accident. His SUV was hit from behind by a pickup truck, causing minor damage. Soon after the accident, Mr. Parra phoned his wife, reporting that he did not feel well, that he had a headache, blurred vision, and dizziness, and that he could not drive home. Kay Parra, his wife and the plaintiff in this action ("Plaintiff"), then drove to Mr. Parra's location with her son, where they found Mr. Parra vomiting and complaining of a headache. Plaintiff then drove her husband home, where he went to bed.

The next day, plaintiff phoned one of Mr. Parra's treating physicians, Dr. Ralph Camacho, to tell him about the accident and about her husband's condition. Dr. Camacho suggested Mr. Parra go to the emergency room, but Mr. Parra, who had expressed his antipathy toward hospitals, refused to go and remained at home. Over the next two days, Mr. Parra became increasingly lethargic, and on September 28, 2000, he remained in bed, possibly slipping into a coma. When her husband be-

gan vomiting in his sleep, plaintiff again called Dr. Camacho's office. Over the phone, the doctor listened to Mr. Parra's breathing, which plaintiff said had changed over the course of the day. Dr. Camacho prescribed medication to control the nausea and suggested that a hospice service come to the house, but plaintiff declined. Early the next morning, Mr. Parra died.

Soon thereafter, the family reported Mr. Parra's death to the police, who arrived at the house with paramedics and staff from the coroner's office. After determining that no crime was involved, the police turned Mr. Parra's body over to the coroner's office. Importantly, the police reported that Mr. Parra had been attended by a physician within the last 20 days. In such cases, the death is treated as an "attended death," and no further investigation is called for. When examining the body, the police also noted that there were no signs of bruising or any other evidence of trauma on Mr. Parra. When the body was taken by the coroner's office personnel, plaintiff was given a piece of paper with "Coroner's Hold" written across the top, causing her to believe that her husband's body would have an autopsy performed on it. (*See* Declaration Of Carolyn A. Knox In Support Of Defendant Life Insurance Company of North America's Motion For Summary Judgment ("Knox Decl."), Ex. B at LINA01165.) No autopsy was performed, however, and Mr. Parra was cremated without any medical examination.

The death certificate described Mr. Parra's death as "immediate cause—cardiac arrest due to cirrhosis of liver," with "other significant conditions contributing to death" listed as "diabetes, congestive heart failure." (Knox Decl., Ex. C at

the Court, as well as the declarations in support of these motions. Where an individual

fact is important, it shall be indicated by a specific reference.

LINA00213.) It was signed by Dr. Camacho, Mr. Parra's primary doctor.

The police report, coroner investigator report, paramedic's report, and original death certificate all indicate nothing about the September 25, 2000 accident. According to defendant J.C. Penney Insurance Co., had the accident been reported to the officials at the scene, it would have triggered an autopsy by the Coroner's Office. (*See* Declaration Of Cynthia D. McGaughey In Support Of Defendant J.C. Penney Life Insurance Company's Motion For Summary Judgment ("McGaughey Decl.,"), Ex. G at JCP 71 (notes of McGaughey's telephone conversation with the Alameda County Coroner's Office).) [2] However, no report of the September 25, 2000 accident was made to any of the paramedics, police officers, or coroner's officer personnel at the scene of Mr. Parra's death, so Mr. Parra was cremated without having undergone any post-mortem examination, other than that performed by the police officers at the house. Once again, that examination revealed no evidence of any bruising or other trauma to Mr. Parra's body.

### 2) Mr. Parra's Insurance Policies

Mr. Parra was a subscriber to several insurance policies that provided benefits in the event of an accident resulting in injury or death. These were provided by defendants Insurance Company of North America ("INA"), J.C. Penney Life Insurance Company, ("J.C.Penny"), and Union Labor Life Insurance Company ("Union"). Each policy awards survivor benefits when the policyholder is killed as a result of an accident: INA—$250,000, J.C. Penney—$100,000, and Union—$200,000, plus a $25,000 "special hazard benefit" for motor vehicles. (Knox Decl., Ex. B at LINA00003; McGaughey Decl., Ex B at 2; Declaration Of Linda Newkirk In Support Of Defendant Union Labor Life Insurance Company's Motion For Summary Judgment ("Newkirk Decl."), Ex. A at UL 00150.) Each policy also contains critical exclusions from coverage, stating that no benefits shall be paid for deaths caused by disease or illness. (*See* Knox Decl., Ex. B at LINA00001; McGaughey Decl., Ex. B at 5; Newkirk Decl., Ex A at UL 00151.)

After plaintiff applied for payment of death benefits under the policies, defendants denied coverage, claiming that Mr. Parra's death was caused by his various illnesses, not the traffic accident. Plaintiff appealed the denials, both within the insurance companies' internal procedures and through the California Department of Insurance, but defendants did not alter their decisions.

---

**2.** Although the information in Exhibit G of the McGaughey Declaration is hearsay, devoid of any authentication, and lacking foundation, plaintiff does not challenge it.

Related to defendant's allegations about the Alameda Coroner's Office policies are two items plaintiff provides in her Declaration In Support Of Opposition To Defendant J.C. Penney Life Insurance Company's Motion For Summary Judgment And Counter–Motion For Summary Judgment ("Parra JCP Decl."), Ex A at pp. 79–81. These documents purport to be the text of California Government Code, Section 27491 and the Alameda County Sheriff's Office Training Manual. Both of these documents are also hearsay, and plaintiff has neglected to provide a foundation for them or submit them for judicial notice. Turning to their contents, however, they do not indicate that an autopsy in the event of an accident is *automatic*. They merely indicate that the Coroner's Office has the responsibility to investigate deaths caused by accidents and that examination by a forensic pathologist is one of the possible means of investigation.

The potential admissibility of both plaintiff's and defendant's evidence regarding this matter is not at issue, however, as the critical fact is that an autopsy was *not performed*. Whether or not an autopsy *should have been performed* is not relevant.

On September 24, 2001, plaintiff filed suit in California State Court against defendants, and the case was removed to this Court on October 24, 2001. Defendants filed the present motions for summary judgment on January 21, 2003, and plaintiff filed her opposition and a cross-motion for summary judgment on January 23, 2003.[3]

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does not bear the burden of proof at trial, the initial burden of showing that no genuine issue of material fact remains may be discharged by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of genuine issues of material fact. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor must the moving party support his or her own motion with evidence negating the non-moving party's claim. *See id.*

After the moving party makes a properly supported motion, the responding party must present specific facts showing that contradiction of the moving party's presentation of evidence is possible. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978). It is not enough for the responding party to point to the mere allegations or denials contained in the pleadings. Instead, it must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. The evidence must be more than a mere "scintilla;" the responding party must show that the trier of fact could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, summary judgment should be granted "[i]f the evidence is merely colorable ... or is not significantly probative." *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288 (9th Cir.1987). In reviewing a motion for summary judgment, the court must take the responding party's evidence as true and all inferences are to be drawn in its favor. *See id.* at 1289.

However, in reviewing such a motion, the Court does not make credibility determinations with respect to evidence offered, and it is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–

---

**3.** There is some confusion in the Docket Report regarding plaintiff's motions. She filed oppositions to all three defendants' motions and counter motions for summary judgment against all three defendants on January 23, 2003. (*See* docket entry # 's 60. 64, and 68.) Technically, the counter motions were not filed with the five week window required by the Civil Local Rules, but this fact is immaterial, as plaintiff's arguments for summary judgment are identical to her arguments in opposition to defendants' summary judgment motions. The real confusion, however, con-

cerns what are described as "Counter Motions" for summary judgment that plaintiff filed on February 10, 2003. Although the Docket Report titles them as counter-motions, they are intended by plaintiff to be "replies." They are not actually replies, however, since none of the defendants filed oppositions to plaintiff's motions of January 23, 2003. None of the arguments or allegations contained in these papers are properly before the Court through these filings, but the same points are raised in plaintiff's other papers.

31 (9th Cir.1987). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts ...." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

## ANALYSIS

### 1) Defendant Life Insurance Company Of North America's Motion For Summary Judgment

Defendant Life Insurance Company of North America ("LINA") seeks summary judgment on the grounds that it did not abuse its discretion in denying benefits to plaintiff. LINA asserts that it is subject to the deferential review accorded to employee benefit plans under the Employee Retirement Income Security Act ("ERISA"). LINA claims that plaintiff has filed for accidental death and dismemberment benefits under the United Airlines, Inc. Welfare Benefit Plan, benefits that have been funded through the purchase of group insurance policies issued by LINA. (*See* Defendant LINA's Motion For Summary Judgment ("LINA Motion") at 1.) As a retired employee of United Airlines, Mr. Parra was able to participate in the benefit plan, including coverage under the accidental death group policy. (*Id.*)

In cases under ERISA, there are two standards of review the Court can apply: *de novo* review, or review for an abuse of discretion. A denial of ERISA benefits is reviewed *de novo* unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "[*Firestone*] means that the default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in or-

der to get any judicial discretion." *Kearney v. Standard Insurance Co.*, 175 F.3d 1084, 1089 (9th Cir.1999) (en banc).

When the district court applies a *de novo* standard of review to denial of benefits claim, it is free to consider the claim on the merits. *See id.* at 1096 (Fletcher, J., concurring). In the summary judgment context, if the Court has sufficient evidence "to enable to full exercise of informed and independent judgment," then it may grant summary judgment. *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir.1995). It is only in applying the abuse of discretion standard that the particular characteristics of summary judgment in ERISA cases come into play.

> Where the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

*Bendixen v. Standard Insurance Co.*, 185 F.3d 939, 942 (9th Cir.1999). Application of the *de novo* standard, however, requires the district court to determine the presence of material facts in dispute, just as it does in other motions for summary judgment.

> Under a de novo standard of review, the district court must review de novo the plan administrator's decision to deny benefits. In conducting that review, the district court may decide the case by summary judgment. It may not do so, however, if there are genuine issues of material fact in dispute.

*Tremain v. Bell Industries*, 196 F.3d 970, 978 (9th Cir.1999).

LINA argues that the Summary Plan Description for Mr. Parra's benefit plan explicitly confers discretion upon the plan to make benefit eligibility determinations, and the language that they cite supports this conclusion. (*See* LINA Motion at 3.) Thus, the appropriate review in this case is for an abuse of discretion, and the Court's review should be confined to the administrative record that was before the plan at the time of denial. *See Kearney,* 175 F.3d 1084 (citing *Mongeluzo,* 46 F.3d at 944). There are two important caveats, however.

▇ First, since LINA urges the Court to consider information outside the administrative record, LINA's Motion can potentially be seen as a waiver of the deferential review to which it is entitled. In support of its determination that the accident did not cause Mr. Parra's death, LINA highlights the lack of any mention of a motor vehicle accident in the Livermore Police Department's report or the paramedic's Prehospital Care Report from September 29, 2000. LINA even specifically directs the Court's attention to these documents, but these reports were not part of the administrative record.

> During the course of this litigation, Defendant J.C. Penney Life Insurance Company served a subpoena of records on the Livermore Police Department. (Knox Decl., Ex. D). The Livermore Police Department Crime/Incident Report, Narrative Report and Alameda County Prehospital Care Report (paramedic report) were not identified and procured by DVC Consultants during LINA's administrative process. These documents, however, are instructive on the issue of what was reported to officials immediately after Mr. Parra died on September 29, 2000. LINA requests the Court review and consider these of-

ficial documents because they provide important information necessary to conduct a full review of LINA's claim decision.

(LINA Motion at 12.) The Court is permitted to allow evidence beyond what was before the plan administrator "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review." *Mongeluzo,* 46 F.3d at 944. Later in its moving papers, however, LINA asserts that the Court should *not* be employing *de novo* review, but the more favorable abuse of discretion standard. "Accordingly, the Court will review LINA's decision under the abuse of discretion standard of review." (LINA Motion at 19:6–7.) In effect, LINA wants to have it both ways: it wants the Court to defer to its discretion in denying benefits based on the administrative record, yet at the same time, to go beyond the administrative record in order to consider evidence favorable to its case.

Second, as will be seen below in the analysis of the other defendants' and plaintiff's motions, even if the Court declined to defer to LINA's discretion and engaged in a *de novo* review of the evidence, summary judgment for LINA is still appropriate. Plaintiff has failed to present competent evidence to establish a triable issue of fact that her husband's death was caused by the accident of September 25, 2000. Therefore, under either standard: abuse of discretion or an independent *de novo* review, LINA is entitled to summary judgment.[4]

**2) The Non–ERISA Motions For Summary Judgment**

Defendants J.C. Penney Life Insurance Company ("J.C.Penny") and Union Labor

---

4. Thus, there will not be a separate analysis focusing solely on the ERISA summary judgment motion. Rather, the conclusions drawn from consideration of the other motions will be applied to LINA.

Life Insurance Company ("Union") and plaintiff Kay Parra all seek summary judgment under the typical standard: that there is no genuine issue of material fact in dispute. *See* Fed.R.Civ. Pro. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

■ In a claim for denial of benefits, the initial burden of proof falls upon the plaintiff to prove that the event giving rise to the claim is within the scope of coverage. *Royal Globe Insurance Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal. Rptr. 435 (1986). When seeking benefits for accidental death, the plaintiff must provide "some affirmative evidence" to establish that the death resulted from an accident. *Johnson v. Minnesota Mutual Life Ins. Co.,* 799 F.Supp. 75, 77 (N.D.Cal. 1992); *Ells v. Order of United Commercial Travelers of America,* 20 Cal.2d 290, 304, 125 P.2d 457 (1942). In this case, plaintiff must furnish evidence that the traffic accident in which Mr. Parra was involved caused his death.

■ The causation need not be exclusive, however, for if the accident was the proximate, or efficient cause that triggered his death, this would be enough. *See Sabella v. Wisler,* 59 Cal.2d 21, 32, 27 Cal.Rptr. 689, 377 P.2d 889 (1963) ("[W]here there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, through the other causes may follow it, and operate more immediately in producing the disaster.") (citation omitted). Specifically, a preexisting illness will not serve as a bar to recovery if an accident is the proximate cause of death or if it sets in progress a chain of events leading directly to death. *Brooks v. Metropolitan Life Insurance Co.,* 27 Cal.2d 305, 309–10, 163 P.2d 689 (1945).

■ In this case, there is ample evidence of a number of serious illnesses that Mr. Parra suffered, including at least one,

the liver disease, that was described as "end stage." (Newkirk Decl., Ex. C at UL 00084 (Dr. Camacho's treatment notes of Mr. Parra).) The notes taken by Mr. Parra's treating physician, Dr. Camacho, are replete with references to his poor prognosis, the fact that his liver was almost not working, and that liver failure was imminent. (*See id.*) In fact, the very symptoms described by plaintiff in the days after the accident and immediately preceding her husband's death—lethargy, vomiting in his sleep, and headaches—had manifest themselves six months prior to the accident. (*Id.*)

What is lacking, however, is any evidence that the September 25, 2000 accident played a role in Mr. Parra's death. There is evidence of structural damage to Mr. Parra's vehicle, and there is plaintiff's passionate belief that the accident and her husband's death are related, but there is no other evidence. (*See* Parra INA Decl., Ex. A at P 50–59.)

There is no medical evidence relating to the effects of the accident upon Mr. Parra. Because of his refusal to seek medical attention, there is no emergency room or ambulance report concerning any injuries Mr. Parra may have suffered during the accident. Most importantly, there is no autopsy report or post-mortem physical exam, which would have established more definitively what the actual cause of Mr. Parra's death was, and whether the traffic accident played any role. What little physical evidence exists actually harms plaintiff's case: namely, the lack of bruising or trauma of any kind on Mr. Parra's body, as presented in both the police report and the paramedic's report. (*See* Declaration Of Eugenia A. Chern In Support Of Defendant J.C. Penney's Motion For Summary Judgment ("Chern JCP Decl."), Ex. D.)

The only support plaintiff can bring forward is her testimony about her husband's condition prior to the accident, her testimony about his condition from September 25, 2000 to September 29, 2000, the recent statements from Drs. Camacho and Musni, and the Amended Death Certificate. While the Court does not, and cannot, at the summary judgment stage, question the credibility of plaintiff's statements, there are serious limits to the evidence she is capable of presenting. To begin, she was not a witness to the accident, and she has established no basis for knowledge about its details, such as how fast the other truck was traveling, how fast her husband was going, and most critically, what injuries her husband sustained. In addition, plaintiff has not disclosed any medical training, so she lacks a basis to present any conclusions regarding the extent of injuries her husband may have suffered from the accident or the effect they may have had on his death.

The doctor's reports fare little better, for they, too, lack the same information. Both doctors confess that their opinions about whatever role the accident may have played are pure speculation. (*See* Supplemental Declaration Of Eugenia A. Chern In Support Of Defendant J.C. Penney's Reply ("Chern JCP Reply Decl."), Ex A (excerpt of Dr. Camacho's deposition), Ex. B (excerpt of Dr. Musni's declaration).) Dr. Camacho opines that the accident could "possibly" have played a role in Mr. Parra's death because his severe liver disease made him susceptible to hemorrhaging. (*Id.*, Ex. A at 40–41.) However, in practically the same breath, he concedes that he lacks the expertise to determine whether any trauma caused hemorrhaging, that he cannot say with any degree of medical certainty what caused Mr. Parra's death, and that without diagnostic tests such as an MRI or autopsy, it is "sheer speculation" to say whether his death was a result of the accident. (*Id.*) For his part,

Dr. Musni is the only physician to provide any potential mechanism for Mr. Parra's death, discussing the possibility of Mr. Parra's head striking the steering wheel, followed by an inter-cranial contusion and subsequent collection of blood which caused the symptoms plaintiff describes. (*Id.*, Ex. B at 33–34.) Immediately after this theory, though, Dr. Musni confesses that there is no evidence of any of the elements of his theory, and that it is "just speculation." (*Id.*) The speculation of doctors who freely admit that they cannot determine whether the accident played any role whatsoever in Mr. Parra's demise does not qualify as "affirmative evidence" that the accident was the cause of death. *See Johnson,* 799 F.Supp. at 77. Such conjecture as to causation fails to establish sufficient grounds that a trier of fact could reasonably find in plaintiff's favor. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

The Amended Death Certificate is the final piece of evidence plaintiff offers to support her contention that the accident caused her husband's death. While the original death certificate, signed by Dr. Camacho, described "cardiac arrest due to cirrhosis of liver" as the immediate cause, with other significant conditions contributing to death listed as diabetes and congestive heart failure, (Knox Decl., Ex. C at LINA00213), Dr. Camacho signed an amended certificate on January 16, 2003. This new Certificate changes "**Immediate Cause (A)** *cardiac arrest* **Due To (B)** *cirrhosis of liver* " to "**Immediate Cause (A)** *cardiac arrest* **Due To (B)** *possibly due to motor vehicle accident* **Due To (C)** *cirrhosis of the liver.*" (*Compare id. to* Chern JCP Decl., Ex. F (emphasis added; bold represents language in the form itself; italics represent Dr. Camacho's handwritten entries).) While plaintiff asserts that the Amended Death Certificate aids in a determination that the accident was in fact the efficient cause of death, or at least

that it raises a triable issue of fact regarding the cause of death, the Court disagrees.

In his deposition, Dr. Camacho admits that no medical evidence had changed since the original death certificate was signed; there was no new clinical information or any change in the medical records that led him to submit the amendment. (Chern JCP Reply Decl., Ex A at 41–44.) While stating that he felt it was important to place another "factor in the probable cause of [Mr. Parra's] death," Dr. Camacho freely admits that in the absence of any diagnostic tests, it is "speculation" to say whether the accident contributed or did not contribute to Mr. Parra's death. (*Id.* at 41–42.) With this admission in mind, the Court cannot accept the Amended Death Certificate as adequate evidence that the accident caused the death of plaintiff's husband, thus entitling her to benefits under the policies at issue.

In effect, rather than presenting evidence, plaintiff is asking the Court to follow a type of syllogism: (A) Mr. Parra was doing well before September 25, 2000; (B) on that day, he was in a traffic accident; (C) immediately after the accident, Mr. Parra became ill, suffered a severe decline in health, and died four days later; therefore, the accident must have caused the death. While this logic might follow more seamlessly with a healthier individual, there are too many other factors at play in Mr. Parra's case. In the absence of any physical evidence to determine the medical effects of the accident on Mr. Parra, his list of illnesses is too long to attribute causation to the accident. To support her case for benefits, it is the plaintiff's burden to establish that the accident caused her husband's death, or at least was an external event that set in motion a series of events that resulted in his death. *See Ells,* 20 Cal.2d at 304, 125 P.2d 457 (holding that the burden is on the plaintiff); *see*

*Brooks,* 27 Cal.2d at 309–10, 163 P.2d 689 (finding a preexisting illness is no bar to recovery if it sets in motion a chain of events resulting in death); *see also Khatchatrian v. Continental Casualty Co.,* 198 F.Supp.2d 1157, 1162 (C.D.Cal.2002) (defining "accidental death" as caused by some event or occurrence unforeseen and external to the deceased that is the proximate or sole cause of death). Plaintiff does not present the Court with enough evidence to satisfy her burden.

Plaintiff discusses in some detail evidence that is *not* in the record—largely mistakes in the police report and the failure of the Alameda County Coroner's Office to perform an autopsy on her husband. Plaintiff points out numerous errors in the police report, and states that it was a mistake for the coroner's office not to perform an autopsy. (*See* Plaintiff's Opposition To Defendant J.C. Penney's Motion For Summary Judgment ("Opp.JCP") at 23, 14.) Plaintiff alleges that the major error by the Coroner's Office was its incorrect determination that Mr. Parra had been attended by a physician in the last 20 days. (*Id.* at 14.) Deaths where the deceased had not been seen by a doctor within 20 days must be investigated by the coroner, an examination that may include an autopsy. (*See* Parra JCP Decl., Ex A at 79 (Cal.Gov.Code § 27491).) Contrary to the reports filed after Mr. Parra's death, plaintiff maintains that her husband was not seen by a doctor within 20 days, making the decision not to conduct further investigation a mistake. (*See* Opp. JCP at 14.)

While the Court is sensitive to plaintiff's inability to prevent or correct these mistakes, the propriety of the coroner's office's actions and the accuracy of the coroner's report are matters beyond its purview. All that the Court can consider is evidence properly brought before it.

Plaintiff asserts that the failure to perform an autopsy or other physical examination was a serious error, and the lack of the evidence they could have yielded was not deliberate on her part. The critical fact, however, is that no autopsy or other post-mortem investigation was conducted, and the Court lacks any information to establish that Mr. Parra's death was cased by the traffic accident. Because of this dearth of evidence, plaintiff has failed to meet her burden to present triable issues of fact. Summary judgment for defendants is therefore appropriate.

## CONCLUSION

Plaintiff has failed to provide competent evidence that the traffic accident of September 25, 2000 caused the death of her husband. Because of this failure, no trier of fact could reasonably find that she is entitled to the accidental death benefits provided by defendants' policies. Therefore, defendant Life Insurance Co. of North America's Motion For Summary Judgment is GRANTED; defendant J.C. Penney Life Insurance Co.'s Motion For Summary Judgment is GRANTED; defendant Union Labor Life Insurance Co.'s Motion For Summary Judgment is GRANTED; and plaintiff Kay Parra's Cross Motion For Summary Judgment is DENIED.

## ORDER TO SHOW CAUSE

The Court dismissed California Casualty Indemnity Exchange through its January 3, 2002 Order. This Order dismisses plaintiff's claims against LINA, J.C. Penney, and Union. As there is no evidence that the other named defendants have been served in this action, plaintiff is ORDERED TO SHOW CAUSE why her claims against these defendants should not be dismissed as well. Failure to respond to this Order To Show Cause within ten (10) days of the date of the Order shall result in complete dismissal of the action, and the Clerk shall be directed to close the file.

**IT IS SO ORDERED.**