**Estrella PEREZ, Plaintiff,**

v.

**SEARS LIFE INSURANCE COMPANY, Defendant.**

**Case No. 12–23535–CIV.**

United States District Court, S.D. Florida.

Aug. 9, 2013.

Thomas Kenwood Equels, Equels Law Firm, Miami, FL, for Plaintiff.

Gary John Guzzi, Akerman Senterfitt, Miami, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendant, Sears Life Insurance Company's ("SLIC['s]") Motion for Summary Judgment ("Motion") [ECF No. 49] filed on May 24, 2013, together with its Statement of Undisputed Facts ("Defendant's SMF").[1] Plaintiff, Estrella Perez ("Perez"), filed a Memorandum of Law in Opposition to Defendant's Motion ("Response") [ECF No. 66], and a Statement of Material Facts in Response to Defendant's Motion ("Plaintiff's SMF") [ECF No. 65] on June 24, 2013. SLIC replied ("Reply") [ECF No. 75] on July 3, 2013. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

## I. BACKGROUND

This case involves an insured's entitlement to benefits for the death of her husband under a Certificate of Accidental Death Insurance ("Insurance Certificate") [ECF Nos. 49-1, 65-1] pursuant to a Group Accidental Death Insurance Policy, master policy number 64497113. (*See* Ins. Certificate 1). SLIC, the insurer, is a Texas corporation registered to do business in Florida. (*See* Am. Compl. ¶ 3 [ECF No. 24]; Am. Answer ¶ 3 [ECF No. 40] ). Perez, the insured, is a Florida resi-

dent. (*See* Am. Compl. ¶ 2; Am. Answer ¶ 2). Perez purchased insurance coverage provided by SLIC and received the Insurance Certificate on January 24, 2007.[2] (*See* Ins. Certificate 1; Pl.'s SMF ¶ 1). Perez subsequently upgraded the coverage for the Insurance Certificate, to be effective June 2007, and her monthly premium increased. (*See* Def.'s SMF ¶ 1; Pl.'s SMF ¶ 2).[3]

The Insurance Certificate covers and defines "Accidental Death" as "[d]eath resulting directly from bodily injury or injuries. The injury or injuries must be sustained by the Insured as a result of an accident and be the direct cause of the loss." (Ins. Certificate 3; *see also* Def.'s SMF ¶ 3; Pl.'s SMF ¶ 4). The loss covered by the Insurance Certificate includes Accidental Death. (*See id.*). The Insurance Certificate further provides "[it] does not cover Loss caused directly by: ... 4. disease, or bodily or mental infirmity." (Ins. Certificate 5; *see also* Def.'s SMF ¶ 4; Pl.'s SMF ¶ 5). Additionally, the Insurance Certificate states "[b]enefits payable under the Policy will be paid when we receive the necessary proof of loss." (Ins. Certificate 7; *see also* Def.'s SMF ¶ 12; Pl.'s SMF ¶ 13). The Master Policy [ECF Nos. 50–2, 65–3] contains a provision which states, "[The] terms [of this Master Policy] shall be construed in accordance

---

1. SLIC's Motion contains a "Statement of Undisputed Facts" section (*see* Mot. 2–6), but SLIC should have filed a Statement of Material Facts separately, *see* S.D. FLA. L.R. 56.1(a). Although contained within the same document, the Court refers to SLIC's "Statement of Undisputed Facts" as Defendant's SMF for ease of reference.

2. Defendant contends the Insurance Certificate was effective January 27, 2007, while Plaintiff contends the Insurance Certificate was effective January 24, 2007. (*Compare* Def.'s SMF ¶ 1, *with* Pl.'s SMF ¶ 1). The Insurance Certificate states the effective date

was January 24, 2007. (*See* Ins. Certificate 1).

3. Although Perez provides a SMF, she fails to comply with Local Rule 56.1(a), and consequently, her paragraphs in response to SLIC's statement do not correspond. Local Rule 56.1(a) states, "Statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant, but need not repeat the text of the movant's paragraphs." S.D. FLA. L.R. 56.1(a).

with the laws of the State of Illinois." (Master Policy 1).

On the evening of August 26, 2007, Perez's husband, Roberto Morales ("Morales"), drove Perez to the Miccosukee Casino ("Casino") in west Miami–Dade County and returned to the home ("Home") he shared with Perez. (*See* Def.'s SMF ¶ 9; Pl.'s SMF ¶ 10). In the early morning hours of August 27, 2007, Perez's tenant, Maritza Llopiz ("Llopiz"), heard Morales's voice through the connected wall of the efficiency she rented from Perez and Morales. (*See* Llopiz Dep. 21:11–22:23 [ECF No. 51–2]; *see also* Def.'s SMF ¶ 9; Pl.'s SMF ¶ 10). Morales placed a phone call to his children in Cuba in the early hours of that morning. (*See* Def.'s SMF ¶ 9; Pl.'s SMF ¶ 10).

Later that morning, Perez called Morales to have him pick her up from the Casino where she had spent the night, but she was unable to reach him. (*See* Perez Dep. 17:17–25 [ECF No. 51–1]; *see also* Def.'s SMF ¶ 10; Pl.'s SMF ¶ 11). Because Perez could not reach Morales, she called Juan de la Cruz ("de la Cruz"), Llopiz's husband, to check on Morales. (*See* Perez Dep. 18:2–4). When de la Cruz reached the Home, the front door was open; and he found Morales dead on the floor inside, lying face up, naked with only his shoes on and bruises on his chest, abdomen, arms, and chin. (*See* de la Cruz Aff. ¶¶ 16–18 [ECF No. 61–1][4]; de la Cruz Dep. 12:3–22:19 [ECF No. 51–2]; *see also* Def.'s SMF ¶ 10; Pl.'s SMF ¶ 11). Llopiz was able to confirm the bruises, as she saw Morales's body lying on the floor of the Home. (*See* Llopiz Aff. ¶¶ 13–18 [ECF No. 59–1]; Llopiz Dep. 16:13–17:9). The autopsy photographs ("Autopsy Photographs") [ECF No. 54] of Morales from the Miami–Dade County Medical Examiner's Department ("Medical Examiner") show bruising or abrasions on Morales's body. (*See* Pl.'s SMF ¶ 9).

Aida Delgado ("Delgado"), Perez's daughter, testified that on the day of Morales's death she watched a video recording taken the night before from the Home's surveillance system. (*See* Delgado Dep. 24:18–25:3 [ECF No. 51–1]; *see also* Def.'s SMF ¶ 11; Pl.'s SMF ¶ 12). The video showed Morales arriving at the Home after dropping Perez off at the Casino, followed by twenty to thirty minutes of inactivity, and then the video "cut off," meaning the video inexplicably went blank. (Delgado Dep. 25:42–26:22).

The Medical Examiner performed an autopsy ("Autopsy Report") [ECF No. 49–2], listing Morales's cause of death as coronary artery atherosclerosis ("Coronary Disease") (*see* Autopsy Report 1), and the Death Certificate ("Death Certificate") [ECF No. 49–3] stated the manner of death was natural, which is not covered under the Insurance Certificate. (*See also* Def.'s SMF ¶¶ 5–6; Pl.'s SMF ¶¶ 6–7). Both parties agree no medical records exist from the years preceding Morales's death. (*See* Def.'s SMF ¶ 7; Pl.'s SMF ¶ 8).

SLIC received Perez's Claim for Benefits ("Claim") on December 7, 2007, which consisted of Morales's Death Certificate, a claim form, and an incident report. (*See* Def.'s SMF ¶ 13; Pl.'s SMF ¶¶ 13–14). SLIC sent a denial letter to Perez after it received her Claim. (*See* Def.'s SMF ¶ 14; Pl.'s SMF ¶ 15). Perez filed an Amended Complaint ("Amended Complaint") [ECF No. 24] on December 17, 2012, claiming

---

4. The Court entered an Order [ECF No. 74] granting Defendant's Motion to Strike ... [ECF No. 70] the Affidavits of Delgado [ECF No. 56–1], Llopiz [ECF No. 58–1], de la Cruz [ECF No. 60–1], and Efrain Lopez ("Lopez") [ECF No. 62]. Accordingly, the Court cites to the supplemental Affidavits in place of the Original Affidavits.

breach of contract and seeking payment of benefits under the Insurance Certificate and other damages. (*See generally* Am. Compl.). SLIC presently moves for summary judgment in its favor. (*See* Mot. 2).

## II. LEGAL STANDARD

 Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(a, c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir.2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (internal quotation marks omitted)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 Fed.Appx. 839, 841 (11th Cir.2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (internal quotation marks omitted)). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07–21516–CIV, 2008 WL 2914977, at *2 (S.D.Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotation marks omitted)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a gen-

uine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (alterations and internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[T]he plain language of [Federal] Rule [of Civil Procedure] 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir.2012) (alterations omitted) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## III. ANALYSIS

SLIC maintains summary judgment should be entered in its favor in this breach of contract action because there is no proof Morales was involved in an accident. (*See* Reply 2–3). SLIC further argues even if Perez can establish an accident occurred, there is no coverage under the Insurance Certificate because Perez cannot establish the accident directly and independently caused Morales's death, and thus, she cannot create a genuine issue of material fact. (*See* Mot. 9–12; Reply 3–7). As such, SLIC maintains it properly denied coverage. (*See* Reply 10). Perez argues summary judgment is inappropriate because the Insurance Certificate covers Morales's death, and the evidence creates genuine issues of material fact regarding whether an accident caused the death. (*See* Resp. 2). Perez maintains there is no conclusive proof of Morales's cause of death, as the Autopsy Report contains various errors and is therefore unreliable. (*See id.*). Perez additionally contends Morales's death was proximately caused by an accident (likely an assault), and SLIC breached the Insurance Certificate

by wrongfully denying coverage. (*See id.* 1–2).

Under Illinois law,[5] the construction of an insurance policy's provisions and terms is a question of law, and the Court should afford the contract its plain, ordinary and popular meaning. *See Borrelli v. Unumprovident Corp.*, No. 01C6938, 2002 WL 31319476, at *3–4 (N.D.Ill. Oct. 11, 2002) (citations and internal quotation marks omitted). Where an insurance policy requires that an accident be the cause of the death of an insured, the insured has the burden of proving the death comes within the terms of the policy. *See id.* at *3. To survive summary judgment, a plaintiff must present sufficient evidence which could convince a reasonable jury the death was the result of an accident. *See Sawyer v. Hartford Life & Acc. Ins. Co.*, No. 10–cv1293–MMA (BLM), 2012 WL 353775, at *4 (S.D.Cal. Feb. 2, 2012) (citation omitted) (interpreting a SLIC insurance certificate under California law, which requires a plaintiff to prove the occurrence of an accident and causation under an accidental death policy, similar to Illinois law).

The Insurance Certificate at issue covers Accidental Death, which is defined according to the Policy as "[d]eath resulting directly from bodily injury or injuries." (Ins. Certificate 3). The Master Policy further defines Accidental Death as "death resulting directly from bodily injury effected solely through external, violent and accidental means." (Master Policy 3). "The injury or injuries must be sustained by the [i]nsured as a result of an accident and be the direct cause of the loss." (Ins. Certificate 3). The question of whether Morales's death is covered by the Insurance Certificate, therefore, depends on whether Perez has presented sufficient evidence to establish a genuine issue of material fact regarding whether Morales was involved in an accident and whether Morales's death was caused "directly from bodily injuries" as a result of that accident.

## A. Whether There Was an Accident

SLIC argues Morales's death is not covered under the Insurance Certificate as an Accidental Death because there is no competent proof that an assault occurred. (*See* Mot. 7–9). According to SLIC, without evidence of an accident, there is no genuine issue of material fact. (*See id.* 7). Perez disagrees, maintaining Morales's death was proximately caused by an accident—an assault—and a dispute of material fact exists regarding whether an accident occurred. (*See* Resp. 1–2).

Neither the Master Policy nor the Insurance Certificate specifically defines accident; however, under Illinois law, the term "accident" in relation to an accidental death policy is "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unex-

---

**5.** In determining which law governs the interpretation of the terms of the Insurance Certificate, a federal court sitting in diversity must apply the forum state's choice-of-law rules. *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Therefore, the Court applies Florida choice-of-law rules. *See, e.g., James River Ins. Co. v. Fortress Sys., LLC*, No. 11–60558–CIV, 2012 WL 760773, at *2 (S.D.Fla. Mar. 8, 2012). Under Florida's choice-of-law rules, it is well-settled that "Florida courts are obligated to enforce choice-of-law provisions unless

a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust." *Great Am. Fid. Ins. Co. v. JWR Const. Servs., Inc.*, 882 F.Supp.2d 1340, 1350 (S.D.Fla.2012) (quoting *Gilman + Ciocia, Inc. v. Wetherald*, 885 So.2d 900, 902 (Fla. 4th DCA 2004) (internal quotation marks omitted)). In the present case, the Master Policy states Illinois law applies. (*See* Master Policy 1). Further, both parties agree Illinois law governs the terms of the Insurance Certificate. (*See* Mot. 6 n. 4; Resp. 3).

**1198**

pected event of an inflictive or unfortunate character." *Borrelli*, 2002 WL 31319476, at *4 (quoting *Litman v. Monumental Life Ins. Co.*, 289 Ill.App.3d 181, 183, 224 Ill. Dec. 574, 682 N.E.2d 135 (1st 1997).) Here, disputed issues of material fact exist regarding whether there was an accident resulting in Morales's death. Relying on the Autopsy Photographs; the de la Cruz Affidavit, the Llopiz Affidavit, the Delgado Affidavit [ECF No. 57–1], and the Perez Affidavit (collectively, "Affidavits"); the de la Cruz Deposition, the Llopiz Deposition, and the Delgado Deposition (collectively, "Deposition Testimony"); Perez contends Morales's death was accidental within the meaning of the Insurance Certificate, as Morales was the victim of an assault that proximately caused his death. (*See* Resp. 1–2). The exhibits to the Motion—the Autopsy Photographs, with images of bruising most noticeable around Morales's chest and groin, as well as an abrasion on his chin; the Affidavits and Deposition Testimony, which attest to Morales's health and appearance prior to his death, noises heard from the Home prior to Morales's death, bruises on Morales's body before his body was taken from the Home; and video surveillance of the Home that inexplicably cuts off sometime before Morales died— show Morales may have been "a victim of some type of violent foul play" leading to his death. (Pl.'s SMF ¶ 9). This evidence, taken together and viewed in the light most favorable to the non-moving party, shows an attack or assault may have occurred. Thus, the Court agrees Perez has submitted sufficient evidence to create a genuine issue of material fact regarding whether an accident occurred.

SLIC contends Perez relies solely on speculation and conjecture to claim an accident such as an assault occurred and makes much of the fact that:

> There are no witnesses. There are no photographs of the "crime" scene. No-

> body was charged with a crime. There is no police file. Plaintiff, nor any other witness, is aware of any police investigation. There is no evidence of forced entry. There is no evidence of foul play at the premises.... [T]here is nothing, other than pure speculation, that the insured was assaulted and battered.

(Reply 2). SLIC insists the appearance of bruises and cuts on Morales's body when he was found in his house, and the fact he was lying naked with a towel near the front door does not establish an unknown assailant assaulted Morales. (*See id.*).

SLIC's contention that Perez's proof of an accident is "sheer speculation" (*id.*) is unavailing. The Court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment. *See Chapman*, 229 F.3d at 1023. The evidence, as presented by Perez, establishes the door to Morales's Home was conspicuously and unusually ajar, the video surveillance system mysteriously shut off, and marks existed on Morales's body, all of which are at least consistent with an unexpected attack. Consequently, a genuine issue of material fact exists regarding whether Morales suffered bodily injuries as a result of an accident.

SLIC further challenges Perez's ability to show an accident occurred in light of the Autopsy Report, which lists Morales's cause of death as Coronary Disease—a cause of death not considered accidental under the Insurance Certificate. (*See* Mot. 2). SLIC states the Autopsy Report makes no mention whatsoever of any bodily injury or bruises, let alone any bodily injury contributing to Morales's death, and there are no medical records or expert medical testimony to refute the autopsy findings as reflected in the Death Certificate. (*See* Mot. 7; *see also* Def.'s SMF ¶¶ 6–8). SLIC insists the Autopsy Report

conclusively establishes Morales's death was not the result of an accident, and as such, there can be no genuine issue of material fact regarding whether an accident occurred. (*See* Reply 8–10).

Perez challenges the accuracy of the Autopsy Report and questions its failure to mention any of the bruises or abrasions on Morales's chin, groin, arms, or chest, which Perez alleges are clearly evident in the Autopsy Photographs. (*See id.*). To further refute the Autopsy Report, Perez states the Autopsy Photographs contain a picture of another decedent among the photographs of Morales, and the Death Certificate incorrectly identifies Morales's time of death, suggesting the Autopsy Report is unreliable and the product of careless work. (*See id.*). Questions regarding the credibility of evidence are questions of fact reserved for the jury. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505. In comparing the Autopsy Photographs and circumstances surrounding Morales's death with the Autopsy Report, a genuine issue of fact arises regarding whether an accident may have occurred.

**B. Whether Morales's Death was "Accidental"**

SLIC argues even if Perez can establish an accident occurred, there is no coverage under the Insurance Certificate, as Perez cannot establish the accident directly and independently caused Morales's death because proof of causation is absent. (*See* Mot. 9–12; Reply 3–7). Perez contends there is coverage under the Insurance Certificate, as an accident need not be the exclusively independent cause of death for her to recover benefits. (*See* Resp. 6). Perez maintains Morales's death was proximately caused by an accident because the "trauma and shock from [the accident] directly caused [ ] Morales to die as a result of a heart failure." (Resp. 5; *see also id.*

6–8). The Court next examines if there is evidence sufficient to show the heart failure was caused by the accident.

■ As stated, the insured carries the burden of proving a death comes within the terms of the policy, *see Borrelli,* 2002 WL 31319476, at *3; Perez has the burden of proving Morales's heart failure was caused by the alleged accident. In the context of determining whether a death is covered by an accidental death insurance policy, causation is an essential issue for the plaintiff to prove. *See, e.g., Kolowski v. Metro. Life Ins. Co.,* 35 F.Supp.2d 1059, 1062 (N.D.Ill.1998). More specifically, an insurer must provide benefits if the accident is—at minimum—the proximate cause of the death. *See Borrelli,* 2002 WL 31319476, at *4 (citations omitted).

■ As a general rule, under Illinois law, a death is presumably the result of natural causes. *See Kolowski,* 35 F.Supp.2d at 1062. However, if any unexpected or unforeseen trauma, external force or event causes or triggers a death, the death can be considered an accidental injury. *See id.* Thus, a fatal heart attack with evidence of a triggering event may be viewed as an accident under an accidental death policy. *See Haley v. Am. Int'l Life Assur. Co. of NY,* 789 F.Supp. 260, 264 (N.D.Ill.1992).

That an assault can cause a heart attack, however, is not a natural inference a juror can make through human experience. *Cf. Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1320, 1322 (11th Cir.1999) (affirming summary judgment for the defendant and holding the question of whether breast implants can and did cause a systemic disease in the plaintiff is not a natural inference the jury could make without medical testimony). Without evidence, a "jury [can] only speculate as to whether or not [an] accident had anything to do with the cause of death" or triggered it. *Lough*

v. *BNSF Ry. Co.*, 370 Ill.Dec. 734, 988 N.E.2d 1090, 1095 (Ill.App.3d 2013) (citation and internal quotation marks omitted) (discussing proximate cause with respect to a wrongful death claim); *see also Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 701 (N.D.Ga.2006) (finding when the plaintiff cannot present expert testimony establishing causation, defendant's motion for summary judgment should be granted). Causation can also be based on circumstantial evidence; however, if the causal relationship is based on circumstantial evidence, the facts and evidence must reasonably permit the inference of cause and effect. *See Scholle v. Cont. Nat. Am. Grp.*, 44 Ill.App.3d 716, 721, 3 Ill.Dec. 350, 358 N.E.2d 893 (Ill.App.2d 1976). Consequently, the Court must determine if Perez presents evidence sufficient to create a genuine issue of material fact regarding whether Morales's heart failure was caused by an accident. *See Kolowski*, 35 F.Supp.2d at 1062.

In the present case, Perez does not offer any evidence except her own testimony to establish a causal connection between the alleged assault and Morales's death. Perez contends the Autopsy Photographs, Deposition Testimony, and Affidavits establish an assault occurred, and the evidence and circumstances suggest a "logical conclusion" that the shock and trauma Morales experienced during the assault were the direct and proximate cause of his death. (Resp. 6). Yet, Perez does not provide any expert witnesses, medical testimony, or doctors' reports establishing the cause of Morales's death or even that an assault *can* trigger heart failure. Instead, Perez simply claims Morales's health "was good in the years, days and hours prior to his death and thus it was unlikely that he would just die from a spontaneous heart attack without provocation" (Resp. 5), and "Morales did have a doctor; however, he did not seek appointments with his doctor because he felt healthy, was not symptomatic of any illness, took no prescription medications and never complained about his health" (Pl.'s SMF ¶8 (citing Perez Dep. 13–14)). Even if the Court assumes the veracity of Perez's statements, the evidence is insufficient to establish causation, as there is no competent evidence to establish Morales died because of an accident.

The instant case is similar to the circumstances present in *Parra v. Life Insurance Co. of North America*, 258 F.Supp.2d 1058, 1067 (N.D.Cal.2003). In *Parra*, the district court found that without evidence establishing causation, a plaintiff's speculation regarding the cause of her husband's death was insufficient to overcome summary judgment in favor of the insurance company. *See id.* at 1066–67. There was no autopsy report or post-mortem physical exam which would have established more definitively the actual cause of the plaintiff's husband's death. *See id.* at 1066. Additionally, the plaintiff was not a witness to the accident and had not established a link between the traffic accident and the heart failure to suggest causation. *See id.* at 1067. The plaintiff had not disclosed any medical training, knowledge, or expertise, so she lacked a basis to present any conclusions regarding the extent of the injuries her husband may have suffered from the alleged accident or the effect they may have had on his death. *See id.* Although the plaintiff submitted two doctors' reports indicating the accident could possibly have played a role in the plaintiff's husband's death, both were rejected by the court as "pure speculation." *Id.*

Like in *Parra*, Perez was not a witness to the alleged assault, and she similarly has not established a link between the assault and the heart failure to suggest causation. In addition, Perez has not disclosed any medical expertise qualifying her to present any conclusions regarding the

extent of the injuries her husband may have suffered from the assault or the effect they may have had on his death. "What little physical evidence exists actually harms plaintiff's case," *id.* at 1066, as the Autopsy Report reports the cause of death was the result of Coronary Disease. Moreover, Perez presents no contrary doctor or expert report to opine on the extent of her husband's injuries and the effect the injuries may have had on Morales's death.

In effect, rather than presenting evidence, Perez asks the Court to apply the following syllogism: (A) Morales was doing well and did not have bruises the days, weeks and months before he died; (B) on August 27, 2007, there was an alleged assault (based on the bruises seen on Morales's body, the noises heard by neighbors coming from his Home, the open door to Morales's Home, and the "cut off" video surveillance tape); (C) immediately following the alleged assault, Morales suffered heart failure; therefore, (D) the alleged assault must have caused the death. (*See* Resp. 5–6). Drawing such a conclusion from a temporal relationship leads to the blunder of the *post hoc ergo propter hoc* ("after this, because of this") fallacy, which assumes causality from temporal sequence. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir.2005). The fallacy makes the false assumption that a temporal relationship proves a causal relationship. *See id.* In other words, Morales's death following the alleged attack does not prove the attack caused or triggered his death without additional evidence of causation. Furthermore, the Autopsy Report, albeit contested, lists Coronary Disease as Morales's cause of death, which casts doubt on Perez's theory the trauma of the assault must have triggered the death. Consequently, in the absence of evidence establishing Perez's theory the alleged attack triggered or precipitated Morales's

heart failure, Perez is unable to create a genuine issue of material fact.

Perez insists the Court apply the rationale of *Sawyer*, 2012 WL 353775, a case in which the court denied summary judgment in favor of the insurance company, in part, because "based on [the] evidence ... the question of what caused the death was a question of fact for the jury." *See id.* at *7; *see also* Resp. 8. In *Sawyer*, the insured, a man with chronic obstructive pulmonary disease, Cor Pulmonale, an arterial flutter, and a pulmonary embolism, was involved in a car accident in which he was trapped in his car for approximately eight hours in one hundred degree heat. *See generally Sawyer*, 2012 WL 353775, at *1–2. Two days after the accident, the insured had trouble breathing and was rushed to the hospital, where he slipped into a coma and died three hours later. *See id.* at *2. The court found "the presence of preexisting disease ... will not relieve the insurer from liability if the accident is the proximate cause of death ... [Recovery] may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause." *Id.* at *6 (alteration in original; emphasis and citation omitted).

Despite Perez's insistence, *Sawyer* presents a vastly different set of circumstances than the present case. The plaintiff in *Sawyer* presented evidence to establish causation between the accident and the insured's death. *See id.* at *5. Indeed, the deceased in *Sawyer* was involved in a serious car accident, and the plaintiff introduced medical chart notes and a medical expert to link the accident to the deceased's death and create a triable issue regarding the cause of death. *See id.* In the present case, Perez, relying on infer-

**1202**

ences alone, asserts the Autopsy Photographs, Deposition Testimony, and Affidavits establish an assault occurred, and the nebulous evidence and circumstances of that assault serve to create an issue of material fact that the shock and trauma Morales experienced during the assault were the direct and proximate cause of his death. (*See* Resp. 6). As mentioned, Perez provides no evidence Morales died as a result of an accident aside from her own unsubstantiated belief.

In sum, although there is a genuine issue of material fact as to whether an accident occurred, there is no genuine issue of material fact regarding whether the accident caused Morales's death, as Perez has not presented *any* evidence sufficient to create an issue of material fact regarding causation. Because Perez cannot meet her burden to show Morales's death is a covered loss under the Insurance Certificate, she cannot show SLIC breached its contract by wrongfully denying benefits. As such, SLIC is entitled to summary judgment as a matter of law.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [**ECF No. 49**] is **GRANTED.** Summary judgment is entered in favor of Defendant, Sears Life Insurance Company. A final judgment will be entered separately.